UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARAB SALEM, Individually and On Behalf of All Others Similarly Situated,<br><br>                                    Plaintiff,<br><br>          v.<br><br>NIKOLA CORPORATION, TREVOR R. MILTON, MARK A. RUSSELL, and KIM J. BRADY,<br><br>                                    Defendants. | Case No.<br><br><br>CLASS ACTION COMPLAINT<br><br><br>JURY TRIAL DEMANDED |

Plaintiff Arab Salem ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Nikola Corporation ("Nikola" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Nikola securities between June 4, 2020 and September 9, 2020, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Nikola purports to operate as an integrated zero-emissions transportation systems provider.  The Company purports to design and manufacture battery-electric and hydrogen-electric vehicles, electric vehicle drivetrains, vehicle components, energy storage systems, and hydrogen fueling station infrastructure.  The Company also purports to develop electric vehicle solutions for military and outdoor recreational applications.  Nikola was founded in 2015 by Defendant Trevor

Milton ("Milton"), and in June 2020, the Company's securities began trading publicly after the execution of a reverse merger with VectoIQ Acquisition Corp.

3.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Defendant Milton had repeatedly misrepresented and/or exaggerated Nikola's financial, technological, and operational profile; (ii) the foregoing misrepresentations were intended to, and did, present a materially false image of the Company's growth and success, thereby artificially inflating the Company's stock price; (iii) the foregoing misrepresentations were foreseeably likely to subject the Company to enhanced regulatory scrutiny and/or enforcement, along with reputational harm when the truth came to light; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

4.      On September 10, 2020, Hindenburg Research ("Hindenburg") published a report entitled, "Nikola: How to Parlay An Ocean of Lies Into a Partnership With the Largest Auto OEM in America" (the "Hindenburg Report" or the "Report"). Asserting that it had gathered "extensive evidence—including recorded phone calls, text messages, private emails and behind-the-scenes photographs," Hindenburg represented that it had identified "dozens of false statements by" Milton, which had led Hindenburg to conclude that Nikola "is an intricate fraud built on dozen of lies over the course of . . . Milton's career." Defendant Milton made these misrepresentations, the Report asserted, to substantially grow the Company and secure partnerships with top auto companies.

5.      On this news, Nikola's stock price fell $4.80 per share, or 11.33%, to close at $37.57 per share on September 10, 2020.

3

6.    Then, on September 14, 2020, after the market had closed, *Bloomberg* reported that the SEC was investigating Nikola to assess the merits of the Hindenburg Report.

7.    Finally, on September 15, 2020, during intra-day trading, the *Wall Street Journal* reported that the United States Department of Justice ("DOJ") had joined the SEC's investigation of Nikola.

8.    On this news, Nikola's stock fell an additional $0.17 per share during intra-day trading, to close at $32.83 on September 15, 2020, an 8.27% decline from its previous close on September 14, 2020.

9.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

11.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

12.    Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b), as the alleged misstatements entered and the subsequent damages took place in this Judicial District.  Pursuant to Nikola's most recent quarterly report on Form 10-Q, as of July 30, 2020, there were 378,980,941 shares of the Company's common stock outstanding.  Nikola's common stock trades on the Nasdaq Stock Market ("NASDAQ").  Accordingly, there are presumably hundreds, if not thousands, of investors in

Nikola's common stock located within the U.S., some of whom undoubtedly reside in this Judicial District.

13.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

14.     Plaintiff, as set forth in the attached Certification, acquired Nikola securities at artificially inflated prices during the Class Period and was damaged upon the revelations of the Company's alleged fraud.

15.     Defendant Nikola is a Delaware corporation with principal executive offices located in Phoenix, Arizona.  The Company purports to operate as an integrated zero-emissions transportation systems provider.  Nikola's common stock trades on the NASDAQ under the ticker symbol "NKLA."

16.     Defendant Milton is Nikola's founder and has served as the Company's Executive Chairman at all relevant times.

17.     Defendant Mark A. Russell ("Russell") has served as Nikola's President and CEO at all relevant times.

18.     Defendant Kim J. Brady ("Brady") has served as Nikola's Chief Financial Officer at all relevant times.

19.     Defendants Milton, Russell, and Brady are sometimes referred to herein as the "Individual Defendants."

20.     The Individual Defendants possessed the power and authority to control the contents of Nikola's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of Nikola's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Nikola, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

21.     Nikola and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

22.     Nikola purports to operate as an integrated zero-emissions transportation systems provider.  The Company purports to design and manufacture battery-electric and hydrogen-electric vehicles, electric vehicle drivetrains, vehicle components, energy storage systems, and hydrogen fueling station infrastructure.  The Company also purports to develop electric vehicle solutions for military and outdoor recreational applications.  Nikola was founded in 2015 by Defendant Milton, and in June 2020, the Company's securities began trading publicly after the execution of a reverse merger with VectoIQ Acquisition Corp.

**Materially False and Misleading Statements Issued During the Class Period**

23.     The Class Period begins on June 4, 2020, the day after Nikola issued a press release announcing that the Company had closed its business combination with VectoIQ and that the Company would begin publicly trading on the NASDAQ the following day.   The press release stated, in relevant part:

> The business combination . . . further solidifies Nikola as a global leader in zero-emissions transportation and infrastructure solutions. On June 4, 2020, the combined company's shares will trade on the Nasdaq under the new ticker symbol "NKLA."
>
> ***
>
> "Nikola is thrilled to complete the Nasdaq listing and be part of the ESG investment world. This is a significant endorsement in fuel-cell and battery-electric technology. Since Nikola launched its first fuel-cell semi-truck, you have seen the world rally behind hydrogen and follow our lead. What was once considered the fuel of the future is now accepted as today's solution," said Nikola's Founder and Executive Chairman Trevor Milton. "With our Nikola IVECO joint venture and over $10 billion in pre-order reservations, Nikola is positioned to be a wonderful story of how one company can literally change the world."

24.     On July 17, 2020, Nikola filed a prospectus on Form 424B3 with the SEC (the "July 17, 2020 Prospectus").   In providing an overview of the Company, the July 17, 2020 Prospectus touted, in relevant part:

> We are a vertically integrated zero-emissions transportation solution provider that designs and manufactures state-of-the-art battery-electric and hydrogen fuel cell electric vehicles, electric vehicle drivetrains, energy storage systems, and hydrogen fueling stations. Our core product offering is centered around our battery-electric vehicle ("BEV") and hydrogen fuel cell electric vehicle ("FCEV") Class 8 semi-trucks. ***The key differentiator of our business model is our planned network of hydrogen fueling stations. We are offering a revolutionary bundled lease model, which provides customers with the FCEV truck, hydrogen fuel, and maintenance for a fixed price per mile, locks in fuel demand and significantly de-risks infrastructure development***.

(Emphasis added.)

25.     Further, the July 17, 2020 Prospectus touted the Company's purported performance in its three business units, stating, in relevant part:

> The Truck business unit is developing and commercializing battery-electric vehicle ("BEV") and hydrogen fuel cell electric vehicle ("FCEV") class 8 trucks that provide environmentally friendly, cost-effective solutions to the short haul and long-haul trucking sector. The Energy business unit is developing and constructing a network of hydrogen fueling stations to meet hydrogen fuel demand for FCEV customers. The Powersports business unit is developing electric vehicle solutions for military and outdoor recreational applications.

26.     In addition, in a section entitled, "Who We Are," the July 17, 2020 Prospectus touted, in relevant part:

> Nikola's vision is to be the zero-emissions transportation industry leader. We plan to realize this vision through world-class partnerships, groundbreaking R&D, and a revolutionary business model.
>
> ***
>
> We believe our station network will provide a competitive advantage and help accelerate the adoption of our FCEVs. We believe our product portfolio and hydrogen fueling network provides a key strategic advantage that differentiates Nikola from competitors and will allow us to disrupt the estimated $600 billion global heavy-duty commercial vehicle and the related fueling and maintenance ecosystems.

27.     Next, in providing an overview of the Company's total addressable market, the July 17, 2020 Prospectus stated, in relevant part, "Nikola's unique bundled lease which includes the FCEV truck, fuel, and maintenance, will allow us to expand our total addressable market significantly when compared to traditional OEMs[,]" and that, "[g]lobally, the total addressable market ("TAM"), is estimated to be a $600 billion per-year with steady growth expected to continue as e-commerce and global economic growth fuel the need for more heavy-duty trucks."

28.     The July 17, 2020 Prospectus also included a discussion of the Company's products, touting, in relevant part:

As the commercial transportation sector transitions towards zero-emission solutions, we believe there will be a need to offer tailored solutions that meet the needs of each customer. Unlike the passenger vehicle market, where users typically return home each day, the commercial vehicle market contains multiple use cases often requiring vehicles to be out on the road for days, or weeks at a time. By offering both BEVs (for short-haul) and FCEVs (for medium- and long-haul), we believe Nikola is uniquely positioned to disrupt the commercial transportation sector by providing solutions that address the full range of customer needs.

\*\*\*

We have developed an extensive portfolio of proprietary technologies that are embedded and integrated in our highly specialized BEV and FCEV zero-emission vehicles. In addition, we plan to leverage our zero-emission powertrain expertise to address transportation adjacencies as exemplified with our Powersports product offerings.

\*\*\*

Our management team is primarily focused on the core semi-truck and hydrogen station programs. However, we believe that we can leverage our zero-emission powertrain expertise to address transportation adjacencies. Our Powersports product offerings provide significant benefits to our core semi-truck and hydrogen station programs, including branding halo, driving awareness of Nikola and our industry-defining technology, and R&D synergies on electric drivetrain, battery technology, and other core components.

\*\*\*

In addition to building heavy-duty zero-emission trucks, Nikola is also developing fueling and charging stations in North America and Europe to support our FCEV fleet customers and to help capture first mover advantage with respect to next generation fueling infrastructure. Over the next 8 to 10 years, Nikola intends to collaborate with strategic partners to build up to 700 fueling and charging stations in North America and approximately 70 fueling and charging stations in Europe.

\*\*\*

Nikola's bundled lease includes maintenance for its vehicles. Service and maintenance of an electric vehicle is expected to be lower than the traditional ICE vehicle which has been proven in the electric passenger vehicle market. Fewer parts and considerably reduced complexity of the key drivetrain components should result in fewer breakdowns and less preventive maintenance, leading to better uptime and lower maintenance cost to operators. Reduced downtime could also lead to increased revenue for fleets as asset productivity increases.

***

A key requirement for our fleet customers is knowing there is an available service infrastructure for the maintenance and repair of our vehicles. Nikola is building a strong network of providers, a robust preventive maintenance program, as well as several levels of service depending on the complexity and type of maintenance required.

Nikola's plans with respect to the service and maintenance of its vehicles is expected to include the following:

- Electric vehicles have a system of sensors and controls that allow for precise monitoring of the vehicle and component operation performance. We will use this data to provide smart predictive maintenance, which will decrease downtime and costs by identifying a potential problem before it results in a breakdown.

- Nikola will have the ability to provide over the air updates and software fixes when the vehicle is stopped. This can significantly reduce the time for repair and improve uptime.

- In cases where a customer has their own maintenance infrastructure, we will identify and provide procedures for items that can be maintained at their shops. This could include procedures such as tire changes, wiper and windshield repair and brake servicing.

- In cases where the customer does not have a maintenance infrastructure or for more complex items, Nikola is leveraging its exclusive partner Thompson Caterpillar for maintenance and warranty work. Customers will have access to an already established network of 800 service stations as well as the ability to deploy a mobile service model. We will also support our partners with technologies like augmented reality and web-enabled video to support technicians for very complex tasks or newly identified issues.

- If a vehicle requires maintenance of a complex system such as the fuel cell or battery, some of those items can be swapped or replaced with relative ease. This allows us to repair the downed component in the background and minimize vehicle downtime. We are also planning to develop a network of trained technicians that can travel to a customer or service partner site as necessary.

29.     Finally, with respect to partnerships and suppliers, the July 17, 2020 Prospectus stated, in relevant part:

Nikola's vision will be realized through a revolutionary business model, groundbreaking R&D, disciplined execution, and world-class partnerships. Our business model is validated and supported by world-class strategic partnerships that significantly reduce execution risk, improve commercialization timeline, and provide a long-term competitive advantage. These world-class partners have accelerated our internal development, growth, and learning and have positioned us to revolutionize the transportation sector. We believe our partnerships help increase the depth and breadth of our competitive advantage as well.

Our partnership philosophy is a recognition that the world's toughest challenges require bold solutions and a collaborative effort from multiple parties. Our goal is to provide zero-emission solutions to the transportation sector and to usher in next-generation grid solutions. With the help of our partners, we believe our chances of success are greatly improved. At Nikola, we are inspired by the knowledge that if we are successful, the whole world wins.

30.     On July 27, 2020, Nikola filed a prospectus on Form 424B3 with the SEC (the "July 27, 2020 Prospectus").  The July 27, 2020 Prospectus contained substantively similar statements as those contained in the July 17, 2020 Prospectus, discussed above in ¶¶ 24-29.

31.     On August 4, 2020, Nikola filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended June 30, 2020 (the "Q2 2020 10-Q").  In providing an overview of the Company, the Q2 2020 10-Q stated, in relevant part:

We are a vertically integrated zero emissions transportation systems provider that designs and manufactures state of the art battery electric and hydrogen electric vehicles, electric vehicle drivetrains, energy storage systems, and hydrogen fueling stations. To date, we have been primarily focused on delivering zero emission Class 8 trucks to the commercial transportation sector in the U.S. and in Europe. Our core product offering includes battery electric and hydrogen fuel cell electric trucks and hydrogen fuel.

We operate in three business units: Truck, Energy and Powersports. The Truck business unit is developing and commercializing BEV and FCEV Class 8 trucks that provide environmentally friendly, cost effective solutions to the short haul and long haul trucking sector. The Energy business unit is developing and constructing a network of hydrogen fueling stations to meet hydrogen fuel demand for our FCEV customers. The Powersports business unit is developing electric vehicle solutions for military and outdoor recreational applications.

32.     Further, with respect to the Company's controls and procedures, the Q2 2020 10-Q

stated:

**Evaluation of Disclosure Controls and Procedures**

We maintain a system of disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934 (the "Exchange Act") designed to ensure that the information required to be disclosed by us in the reports that we file or submit under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in the rules and forms of the Securities and Exchange Commission, and is accumulated and communicated to our management, including our Chief Executive Officer (our principal executive officer) and Chief Financial Officer (our principal financial officer), as appropriate, to allow timely decisions regarding required disclosure.

Our management, with the participation of our Chief Executive Officer and our Chief Financial Officer, has evaluated the effectiveness of our disclosure controls and procedures under the Exchange Act as of June 30, 2020, the end of the period covered by this Quarterly Report on Form 10-Q. Based on such evaluation, our Chief Executive Officer and our Chief Financial Officer have concluded that, as of such date, our disclosure controls and procedures were effective.

**Changes in Internal Control over Financial Reporting**

There were no changes in our internal control over financial reporting, as identified in connection with the evaluation required by Rule 13a-15(d) and Rule 15d-15(d) of the Exchange Act, that occurred during the three months ended June 30, 2020 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

33.     Appended to the Q2 2020 10-Q as exhibits were signed certifications pursuant to

the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Russell and Brady, attesting that "[t]he

information contained in the [Q2 2020 10-Q] fairly presents, in all material respects, the financial

condition and results of operations of the Company as of and for the period covered by the [Q2

2020 10-Q]."

34.     That same day, Nikola hosted an earnings call with investors and analysts to discuss

the Company's financial and operating results for the second quarter of 2020.  During the call,

Defendant Russell touted the purported operational performance of the Company, stating, in

relevant part:

> Nikola is a vertically integrated zero emissions transportation systems provider. We design and manufacture battery electric and hydrogen fuel cell electric vehicles along with the battery charging systems and hydrogen fueling stations to power them. Our core global offering centers on heavy commercial trucks. Our long haul commercial transport solution is especially unique with a revolutionary bundled lease or freight-as-a-service model. We provide customers with a fuel cell electric truck, the hydrogen fuel it needs and the all scheduled maintenance for a fixed total cost.
>
> All the customer needs to provide is a driver. This approach has proven very attractive and many customers are finding that they will be able to transition to zero emissions without an increase in total cost compared to their current fossil fuel solution. Our fuel cell electric truck reservation book exceeded 14,000 units or approximately $10 billion in potential revenue sometime ago.
>
> Since then we focused our efforts on direct partnerships with customers, who have dedicated routes rolling out our hydrogen station network along corporate customers dedicated routes or milk runs allows us to guarantee a high degree of hydrogen station utilization and avoid speculative investments in fueling infrastructure. Stations are being developed based on known customer demand along established dedicated routes.

35.     Later on the call, when answering a question regarding whether the Company

would expand beyond trucking and fuel stations, Defendant Russell replied:

> Well . . . **you have to trust us**, as there's a lot more going on than you see in the announcements. As you know, we're talking to lots of folks. We were talking to lots of folks before, but now this seems like just about everybody in the world knows about us. We're having lots of conversations with lots of people. And when we are able to announce those publicly, we're going to do it just as Kim said. A lot of the people we're talking to would like to keep those conversations confidential for now.
>
> And so that's one of the reasons we don't announce everything that we have going on. But when we have something that we can publicly announce and you're going to hear about it. I will make one additional to Kim's point before. **There's going to be a lot of cool things in Nikola world.** You want, you want to be there? We won't wait. If we have something that's material, of course, we're going to announce it. We're required to do that. But there's going to be a lot of cool stuff that happens in Nikola world. That's going to be a place.

(Emphases added.)

36.     Finally, when asked a question regarding the grid and hydrogen's role in balancing

the energy demand, Defendant Russell replied, in relevant part:

> One of the great benefits of what Nikola is bringing to the world is the ability to
> balance the renewable energy that's coming into the grid.
>
> ***
>
> So one of the great things that Nikola offers to the world is when we put these
> hydrogen stations in and we start to get a lot of them in there, it represents a
> tremendous amount of demand for electricity that can match up to the supply. So
> we can make a – we can make hydrogen when the electricity is available and then
> we don't have to add significant demand to the peak.
>
> ***
>
> And so you got this mismatch between the peak of renewable production, if the
> wind happens to be blowing optimally around noon, and the sun always shines
> optimally at noon, then you've got way too much power at that point. And then but
> sometime around between four o'clock and seven o'clock you don't have enough.
> Well, guess what, when Nicola is there in bulk, which we're going to be in volume.
> We can take a lot of that extra power at the peak and turn it into hydrogen. And
> then we don't have to be pulling power when the rest of the grid needs it so badly
> at the peak of demand.

37.     On August 10, 2020, Nikola issued a press release entitled, "Nikola Receives

Landmark Order of 2,500 Battery-Electric Waste Trucks from Republic Services."  The press

release quoted Defendant Milton, touting, in relevant part:

> "Nikola specializes in heavy-duty, zero-emission Class 8 trucks. The refuse market
> is one of the most stable markets in the industry and provides long-term shareholder
> value," said Nikola Founder and Executive Chairman Trevor Milton. "The Nikola
> Tre powertrain is ideal for the refuse market as it shares and uses the same batteries,
> controls, inverters and e-axle. By sharing the Tre platform, we can drive the cost
> down for both programs by using the same parts. You couldn't pick a better partner
> than Republic Services, a leader in long-term environmental sustainability and
> customer service. Republic Services will help us ensure the Nikola Tre meets
> customer and fleet lifecycle demands and we are excited to have them participate
> in the design process."

14

In addition, the press release quoted Defendant Russell, who stated that "[t]his is a game changer," and that "[r]efuse truck customers have always ordered chassis from truck OEMs and bodies from other suppliers. Nikola has fully integrated the chassis and body, covering both with a single factory warranty. Trucks will include both automated side loaders and front-end loaders — all of which will be zero-emission."

38.     On September 8, 2020, Nikola issued a press release announcing that it had formed a strategic partnership with General Motors Co.  The press release quoted Defendant Milton, stating, in relevant part:

> "Nikola is one of the most innovative companies in the world. General Motors is one of the top engineering and manufacturing companies in the world. You couldn't dream of a better partnership than this," said Nikola Founder and Executive Chairman Trevor Milton. "By joining together, we get access to their validated parts for all of our programs, General Motors' Ultium battery technology and a multi-billion dollar fuel cell program ready for production. Nikola immediately gets decades of supplier and manufacturing knowledge, validated and tested production-ready EV propulsion, world-class engineering and investor confidence. Most importantly, General Motors has a vested interest to see Nikola succeed. We made three promises to our stakeholders and have now fulfilled two out of three promises ahead of schedule. What an exciting announcement."

39.     The statements referenced in ¶¶ 23-38 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Defendant Milton had repeatedly misrepresented and/or exaggerated Nikola's financial, technological, and operational profile; (ii) the foregoing misrepresentations were intended to, and did, present a materially false image of the Company's growth and success, thereby artificially inflating the Company's stock price; (iii) the foregoing misrepresentations were foreseeably likely to subject the Company to enhanced regulatory scrutiny and/or enforcement, along with reputational harm

when the truth came to light;  and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

### The Truth Begins to Emerge

40.     On September 10, 2020, Hindenburg published a report entitled, "Nikola: How to Parlay An Ocean of Lies Into a Partnership With the Largest Auto OEM in America."  Asserting that it had gathered "extensive evidence—including recorded phone calls, text messages, private emails and behind-the-scenes photographs," Hindenburg represented that it had identified "dozens of false statements by" Milton, which had led Hindenburg to conclude that Nikola "is an intricate fraud built on dozen of lies over the course of . . . Milton's career."  For example, the Report alleged, *inter alia*:

- We reveal how, in the face of growing skepticism over the functionality of its truck, Nikola staged a video called "Nikola One in Motion" which showed the semi-truck cruising on a road at a high rate of speed. Our investigation of the site and text messages from a former employee reveal that the video was an elaborate ruse—Nikola had the truck towed to the top of a hill on a remote stretch of road and simply filmed it rolling down the hill.

- In October 2019, Nikola announced it would revolutionize the battery industry. This was to be done through a pending acquisition, but the deal fell through when Nikola realized (a) the technology was vaporware and (b) the President of the battery company had been indicted months earlier over allegations that he conned NASA by using his expense account to procure numerous prostitutes.

  ***

- Inexpensive hydrogen is fundamental to the success of Nikola's business model. Trevor has claimed in a presentation to hundreds of people and in multiple interviews to have succeeded at cutting the cost of hydrogen by ~81% compared to peers and to already be producing hydrogen. Nikola has not produced hydrogen at this price or at any price as he later admitted when pressed by media.

  ***

- Trevor claims Nikola designs all key components in house, but they appear to simply be buying or licensing them from third-parties. One example: we found that Nikola actually buys inverters from a company called Cascadia. In a video showing off its "in-house" inverters, Nikola concealed the Cascadia label with a piece of masking tape.

*** 

- Nikola's much-touted multi-billion dollar order book is filled with fluff. U.S. Xpress reportedly accounts for a third of its reservations, representing ~$3.5 billion in orders. U.S. Xpress had only $1.3 million in cash on hand last quarter.

*** 

- Trevor has ensured he is not going down with the ship. He cashed out $70 million around the IPO and amended his share lock-up from 1-year to 180 days. If he is fired, his equity awards immediately vest and he is entitled to collect $20 million over two years. Milton has laid the groundwork to extract hundreds of millions from Nikola years before ever delivering on his promises.

Defendant Milton made these misrepresentations, the Report suggested, to substantially grow the Company and secure partnerships with top auto companies.

41.    On this news, Nikola's stock price fell $4.80 per share, or 11.33%, to close at $37.57 per share on September 10, 2020.

42.    Then, on September 14, 2020, after the market had closed, *Bloomberg* reported that the SEC was investigating Nikola in connection with the allegations in the Hindenburg Report.

43.    Finally, on September 15, 2020, during intra-day trading, the *Wall Street Journal* reported that the United States Department of Justice ("DOJ") had joined the SEC's investigation of Nikola.

44.    On this news, Nikola's stock fell an additional $0.17 per share during intra-day trading, to close at $32.83 on September 15, 2020, an 8.27% decline from its previous close on September 14, 2020.

45.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

46.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Nikola securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

47.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Nikola securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Nikola or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

48.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

49.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

50.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Nikola;

- whether the Individual Defendants caused Nikola to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Nikola securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

51.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

52.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Nikola securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Nikola securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

53.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

54.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

55.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

56.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

57.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Nikola securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Nikola securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

58.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Nikola securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Nikola's finances and business prospects.

59.     By virtue of their positions at Nikola, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose

such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

60.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Nikola, the Individual Defendants had knowledge of the details of Nikola's internal affairs.

61.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.   Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Nikola.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Nikola's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Nikola securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Nikola's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Nikola securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

62.     During the Class Period, Nikola securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading

statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Nikola securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Nikola securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Nikola securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

63.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

64.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

65.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

66.     During the Class Period, the Individual Defendants participated in the operation and management of Nikola, and conducted and participated, directly and indirectly, in the conduct

of Nikola's business affairs.  Because of their senior positions, they knew the adverse non-public information about Nikola's misstatement of income and expenses and false financial statements.

67.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Nikola's financial condition and results of operations, and to correct promptly any public statements issued by Nikola which had become materially false or misleading.

68.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Nikola disseminated in the marketplace during the Class Period concerning Nikola's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Nikola to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Nikola within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Nikola securities.

69.     Each of the Individual Defendants, therefore, acted as a controlling person of Nikola.  By reason of their senior management positions and/or being directors of Nikola, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Nikola to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Nikola and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

70.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Nikola.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  September 16, 2020

> Respectfully submitted,
>
> POMERANTZ LLP
>
> */s/ Jeremy A. Lieberman*
> Jeremy A. Lieberman
> J. Alexander Hood II
> 600 Third Avenue, 20th Floor
> New York, New York 10016
> Telephone: (212) 661-1100
> Facsimile: (212) 661-8665
> jalieberman@pomlaw.com
> ahood@pomlaw.com
>
> POMERANTZ LLP
> Patrick V. Dahlstrom
> 10 South La Salle Street, Suite 3505
> Chicago, Illinois 60603
> Telephone: (312) 377-1181
> Facsimile: (312) 377-1184
> pdahlstrom@pomlaw.com

THE SCHALL LAW FIRM
Brian Schall
(*pro hac vice* application forthcoming)
Rina Restaino
(*pro hac vice* application forthcoming)
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Telephone: (424) 303-1964
brian@schallfirm.com
rina@schallfirm.com

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.    I, Arab Salem, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.    I have reviewed a Complaint against Nikola Corporation ("Nikola" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.    I did not purchase or acquire Nikola securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.    I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired Nikola securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.    To the best of my current knowledge, the attached sheet lists all of my transactions in Nikola securities during the Class Period as specified in the Complaint.

6.    During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.    I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

DocuSign Envelope ID: 2E83D09E-638E-4561-9A65-F88CFDB62A49

8.      I declare under penalty of perjury that the foregoing is true and correct.


**Executed** 9/10/2020
_____
                **(Date)**


DocuSigned by:

*Arab Salem*

DD5E141FD5F0422...
_____
                        **(Signature)**


Arab Salem
_____
                **(Type or Print Name)**

**Nikola Corporation (NKLA)**                                                    **Salem, Arab**

**List of Purchases and Sales**

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase | 6/17/2020 | 15 | $64.9000 |
| Purchase | 7/8/2020 | 40 | $49.1200 |
| Purchase | 7/8/2020 | 40 | $48.9000 |
| Purchase | 7/8/2020 | 40 | $49.5753 |
| Purchase | 7/8/2020 | 80 | $49.8400 |
| Purchase | 7/8/2020 | 100 | $49.6300 |
| Purchase | 7/8/2020 | 200 | $49.9300 |
| Purchase | 7/8/2020 | 99 | $50.0800 |
| Purchase | 7/8/2020 | 198 | $50.3400 |
| Purchase | 7/8/2020 | 100 | $54.5300 |
| Purchase | 7/8/2020 | 82 | $54.5982 |
| Purchase | 7/9/2020 | 83 | $59.6200 |
| Purchase | 7/21/2020 | 47 | $41.7000 |
| Purchase | 7/24/2020 | 32 | $30.6000 |
| Purchase | 8/21/2020 | 24 | $40.4600 |